UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARRYL TAYLOR,<br><br>        Plaintiff<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant | CIVIL ACTION NO. 3:13-CV-2831<br><br>(MANNION, D.J.)<br>(MEHALCHICK, M.J.) |

**REPORT AND RECOMMENDATION**

This is an action brought under Section 1631(c)(3) of the Social Security Act, 42 U.S.C. §1383(c)(3)(incorporating 42 U.S.C. §405(g) by reference), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the claim of Plaintiff, Darryl Taylor ("Taylor"), for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. This matter has been referred to the undersigned United States Magistrate Judge for resolution pursuant to the provisions of 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons expressed herein, it is recommended that the decision of the Commissioner be **AFFIRMED**.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

On September 7, 2010, Taylor protectively filed an application for SSI alleging disability due to heart problems, blood pressure, depression, and vision issues beginning June 10, 2009. (Admin Tr. 119, 145-46, Doc. 11-5 p. 2, Doc. 11-6, pp. 13-14). His claim was denied initially on April 20, 2011. Thereafter, Taylor requested, and was granted, an administrative hearing. On March 22, 2012, a video hearing was held before Administrative Law Judge ("ALJ") John W. Belcher. Taylor, represented by counsel, appeared and testified in Williamsport, Pennsylvania

while ALJ Belcher presided from Tulsa, Oklahoma. Impartial Vocational Expert ("VE") Christy V. Wilson also appeared and testified at the hearing.

ALJ Belcher denied Taylor's application in a written decision dated April 27, 2012, based on his conclusion that Taylor retained the ability to meet the physical and mental demands of his past relevant work as a fast food worker. (Admin Tr. 13-19, Doc. 11-2 pp. 14-20). Taylor requested review by the Appeals Council. On September 23, 2013, the Appeals Council denied Taylor's request for review, making the ALJ's April 27, 2012, denial the final decision of the Commissioner subject to judicial review pursuant to 42 U.S.C. §405(g). 20 CF.R. §416.1481.

On November 20, 2013, Taylor filed a complaint in this Court. (Doc. 1). On February 11, 2014, the Commissioner filed an Answer and a copy of the administrative record. (Docs. 10, 11). Having been fully briefed by the parties, this appeal is now ripe for review. (Docs. 12, 13, 14).

II. **DISCUSSION**

    A. STANDARD

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g)(sentence five); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200(3d Cir. 2008); *Ficca v. Astrue*, 901 F.Supp.2d 533, 536(M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales,* 402 U.S. 389, 401 (1971). A single piece of

evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before the Court, therefore, is not whether Taylor is disabled, but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); *Burton v. Schweiker*, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); *Ficca*, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it

3

impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); *see also* 20 C.F.R. §416.905(a).

In determining whether a claimant is disabled under the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §416.920(a). Under this process, the Commissioner must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §416.920. The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; *Mason*, 994 F.2d at 1064. Once the claimant has established at step four that he or she cannot do past relevant work, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her age, education, work experience and RFC. 20 C.F.R. §416.912(f); *Mason*, 994 F.2d at 1064.

Before completing step four of this process, the ALJ must also determine the claimant's RFC. 20 C.F.R. §416.920(e). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. §416.945(a)(1); SSR 96-8p, 1996 WL 374184. In making this assessment, the ALJ considers all of the claimant's medically

4

determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §416.945(a)(2).

### B. THE ALJ'S DECISION

In this case, the ALJ proceeded through steps one through four of the five-step sequential evaluation process. At step one the ALJ found that Taylor had not engaged in substantial gainful activity from September 7, 2010, his protective filing date, through April 27, 2012, the date of the ALJ's decision. (Admin Tr. 15, Doc. 11-2 p. 16). At step two, the ALJ found that Taylor had the medically determinable severe impairments of hypertension (noncompliance with treatment), coronary artery disease, hepatitis C, hypertensive retinopathy of the right eye, chronic kidney disease, depression, and marijuana and alcohol abuse. *Id.* At step three, the ALJ found that Taylor did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin Tr. 15-16, Doc. 11-2 pp. 16-17).

Prior to proceeding to step four, the ALJ found that Taylor had the requisite RFC to perform the full range of medium work as defined in 20 C.F.R. §416.967(c). Specifically, he determined that Taylor could:

> lift/carry or push/pull 50 pounds occasionally or 25 pounds frequently. In an 8-hour workday he [could] stand/walk 6 hours (1-2 hours at a time) and sit for 6-8 hours. The claimant [could] do simple 1-2 step tasks. He [could] have superficial contact with coworkers and supervisors and with the public.

(Admin Tr. 16, Doc. 11-2 p. 17).

In assessing Taylor's RFC the ALJ considered a report by a consulting psychologist commissioned by the Social Security Administration, and an evaluation of Taylor's mental RFC by a non-examining state agency psychologist pursuant to SSR 96-6p, 1996 WL 374180.[1] The ALJ also evaluated Taylor's subjective testimony based on the framework outlined in 20 C.F.R. §416.929 and SSR 96-7p, 1996 WL 374186.

In a mental health referral narrative authored by Taylor's caseworker in January 2009, it was noted that Taylor felt faint in crowds and had walked off numerous jobs in the past for that reason. (Admin Tr. 673, Doc. 11-13, p. 4). Between February 2009 and February 2012, Taylor's mental health treatment was followed by Psychiatrist Terri L. Calvert. (Admin Tr. 674-92, Doc. 11-13 pp. 5-23). On initial evaluation Dr. Calvert diagnosed Taylor with dysthymic alcohol dependence, and recorded a "rule out" diagnosis of personality disorder. (Admin Tr. 692, Doc. 11-13 p. 23). Dr. Calvert assigned Taylor a global assessment of functioning score of 60. Id. Over the course of treatment Dr. Calvert met with Taylor for medication management approximately seventeen times for medication management. Dr. Calvert noted that Taylor's affect was euthymic at times, though was also observed to be constricted. (Admin Tr. 674-92, Doc. 11-13 pp. 5-23). Dr. Calvert also noted that Taylor was sometimes "depressed" as evinced

---

[1] The above summary addresses the evidence on the subject of Taylor's mental health impairments, as the arguments in Taylor's brief deal almost exclusively with his mental limitations. The Court notes that on April 20, 2011, state agency medical consultant Mary Ryczak completed a *physical* RFC assessment form after reviewing the evidence of record. (Admin Tr. 664-670, Doc. 11-12 pp. 86-92). Dr. Ryczak opined that Taylor could: occasionally lift twenty pounds and frequently lift ten pounds, stand about six hours per eight-hour workday, and sit up to six hours per eight hour workday. *Id.* The administrative record also contains a large body of medical and hospital records related to Taylor's physical impairments.

by occasional thoughts (without intent or plan) of suicidal ideation. *Id.* Otherwise, Dr. Calvert noted that Taylor's sleep and speech were within normal limits, his thoughts were linear, he exhibited no psychosis, and exhibited adequate hygiene and neat appearance, but the examination notes reveal that his medication compliance, while generally good, was occasionally inconsistent. *Id.*

On December 22, 2010, psychologist John W. Kelsey, Ph.D. examined Taylor. (Admin Tr. 306-315, Doc. 11-7 pp. 99-108). After examining Taylor, and reviewing the available medical records, Dr. Kelsey reported the diagnostic impression of cannabis abuse (chronic), adjustment reaction with mixed emotional features, and adult antisocial personality disorder. *Id.* Dr. Kelsey noted that Taylor's physical problems were superimposed over a long history of specific criminal and acting-out behavior dating back to his teenage years, and that had had begun to withdraw socially. *Id.* Dr. Kelsey attributed this withdrawal to Taylor's poor adjustment and coping skills. *Id.* Dr. Kelsey noted that Taylor's impairments resulted in a marked limitation in his ability to respond appropriately to changes in the work setting, and moderate limitations in his abilities to interact appropriately with co-workers and respond to work pressures in the usual work setting.[2] (Admin Tr. 315, Doc. 11-7 p. 108).

On February 15, 2011, state agency psychologist Frank M. Mrykals, Ed.D., completed a "Psychiatric Review Technique" form and mental RFC assessment. (Admin Tr. 558-73, Doc. 11-11 pp. 85-100). Dr. Mrykals opined that the evidence of record supported the existence of

---

[2] Dr. Kelsey noted these limitations in what appears to be page six of a seven page medical source statement form. If the other pages of this form were completed, they were not made part of the record. (Admin Tr. 315, Doc. 11-7 p. 108).

medically determinable mental impairments of adjustment disorder, antisocial personality disorder ("ASPD"), and polysubstance dependence. *Id.* Dr. Mrykals noted that the above-mentioned limitations resulted in a mild restriction of Taylor's activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and one or two repeated episodes of decompensation of extended duration. *Id.* Dr. Mrykals reported that Taylor was moderately limited in his ability to do the following: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; act appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors. *Id.* Dr. Mrykals opined that, despite the above limitations, Taylor was fairly capable of coping with minor work demands, making simple work-related decisions, and following, comprehending, and retaining simple, routine 1-2 step tasks. *Id.*

At his March 2012 hearing, Taylor testified that he could lift between fifty or sixty pounds and that lifting did not cause any pain or heaviness in his chest. (Admin Tr. 47, Doc.11-2 p. 48). Taylor did report, however that he experienced the above-mentioned symptoms when he had to stand for more than one to two hours at a time. *Id.* Taylor testified that he had no problems sitting. (Admin Tr. 48, Doc. 11-2 p. 49). Taylor also reported that he had difficulty seeing, remembering, completing tasks, and getting along with others. (Admin Tr. 160, Doc. 11-6 p. 28). Despite these limitations he reported that he was still able to prepare his own (simple) meals and clean, do laundry, iron, and mow the lawn, but did not often engage in any social activities outside of the home. (Admin Tr. 155-62, Doc. 11-6 pp. 23-30). Taylor also

testified that he struggled with depression, and, with medication, still had three or four "bad days" each week where he could not be around "a lot of people." (Admin Tr. 49-50, Doc. 11-2 pp. 50-51). At his hearing, Taylor also informed the ALJ that he was scheduled to participate in a vocational program through Community Services Group ("CSG") where he would work five hours per day, five days per week in the restaurant industry. (Admin Tr. 44-46, Doc. 11-2 pp. 45-47). Pursuant to SSR 96-7p, 1996 WL 374186, the ALJ considered Taylor's testimony and found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Admin Tr. 18, Doc. 11-2 p. 19).

At step four, the ALJ found that Taylor was capable of performing his past relevant work as a fast food worker. (Admin Tr. 19, Doc. 11-2 p. 20). The ALJ based his conclusion on testimony by a VE that an individual with the above-mentioned RFC could perform Taylor's past relevant work as a fast food worker. (Admin Tr. 55-57, Doc. 11-2 pp. 56-58).

    C. THE ALJ'S DECISION IS CLEARLY EXPLAINED AND SUPPORTED BY SUBSTANTIAL EVIDENCE

Taylor raises several arguments with respect to the ALJ's treatment of the medical opinions by consultative examiner Kelsey and state agency reviewing psychologist Mrykals. First, he asserts that the ALJ failed to consider the opinions of these Doctors, and argues that

this failure renders the ALJ's RFC assessment unsupported by substantial evidence.[3] (Doc. 12 pp. 5-6, 8). Second, he asserts that remand is warranted because the ALJ failed adequately explain his treatment of these medical opinions. (Doc. 12 pp. 6-7). In response, the Commissioner contends that the ALJ's RFC assessment is supported by substantial evidence, and that the ALJ adequately considered and explained his treatment of the medical opinions of Drs. Kelsey and Mrykalo. (Doc. 13 pp. 20-22).

As discussed above, a claimant's RFC is the most he or she can still do despite his or her limitations. *See* 20 C.F.R. §416.945(a)(1). In making this assessment, the ALJ must consider all evidence before him. *Id.* "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reasons for discounting such evidence." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). This Court has repeatedly held that an ALJ's failure to mention and explain contradictory medical evidence

---

[3] In his reply brief, Taylor also asserts that "the ALJ failed to properly consider and weigh the opinion of Mary Ryczak, M.D., the state agency physician reviewer," and that the Commissioner's failure to respond to this argument should be treated as a concession of this argument by the Commissioner. (Doc. 14 p. 2). However, Taylor concedes that "the ALJ's failure to weigh the opinion of the state agency consultant who assessed plaintiff's physical limitations is harmless error, since the claimant … would still be found "not disabled" even if the consultant's opinion were substituted for that of the ALJ." (Doc. 12 p. 6). Thus, even *if* the Court were to consider the Commissioner's decision not to respond to Taylor's statements in his brief about Dr. Ryczak's opinion, the Commissioner would be, at most, conceding that the ALJ committed *harmless* error. Furthermore, with respect to Taylor's contention that the ALJ's decision that he could perform a range of medium work is unsupported, the ALJ clearly relied on Taylor's testimony on the issue of any lifting restrictions, rather than that of the state agency medical reviewer. (Admin Tr. 19, Doc. 11-2 p. 20)("In sum, the above residual functional capacity assessment is supported by….some of the claimant's testimony, e.g., that he could occasionally lift/carry 50-60 pounds."). As such, the Court finds that the ALJ's assessment of Taylor's abilities to lift and carry is supported by substantial evidence.

was reversible error. *Id.* (remanding for consideration of all the pertinent medical evidence, and explanation of the ALJ's conciliations and rejections); *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)(finding that the ALJ's failure to mention and explain contradictory medical evidence from a treating source was error); *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)("This Court has repeatedly emphasized that the special nature of proceedings for disability benefits dictates extra care on the part of the agency in developing an administrative record and explicitly weighing all evidence."). Such an explanation need not always be "comprehensive," however, since "a sentence or short paragraph would probably suffice" in most instances. *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981) (denying of *sur* petition for rehearing). What matters is not *how* an administrative opinion is organized, but rather whether the ALJ has provided an explanation that makes meaningful judicial review possible. *Knox v. Astrue*, No. 09-1075, 2010 WL 1212561 at *7 (W.D.Pa. Mar. 26, 2010).

Here, the ALJ clearly considered each opinion in his decision, and stated that the medical opinions of record *supported* his conclusion. The ALJ briefly summarized the opinions of both doctors at step two of his analysis, and noted that Taylor "related a work history in which he almost always lost a job after a short period of employment because of conflict with coworkers and supervisors." (Admin Tr. 16, Doc. 11-2 p. 17). Furthermore the ALJ noted that his RFC assessment was "supported by a combination of the consultative evaluation reports, the treatment records, and some of the claimant's testimony…" (Admin Tr. 19, Doc. 11-2 p. 20). While it would have been ideal for the ALJ to provide a more detailed explanation of his evaluation of the opinions of Drs. Kelsey and Mrykalo, the Court is not required "to read the ALJ's opinion in a vacuum," *Knox*, 2010 WL 1212561 at *7, or "remand in quest of a perfect decision." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). As such, the Court finds that

11

the ALJ's findings in this case were specific enough to permit the Court to ascertain that he not only considered, but also credited, the opinions by Drs. Kelsey and Mrykalo. For example, the link between Dr. Mrykalo's opinion and the ALJ's ultimate RFC assessment is clear in light of the limitation requiring that Taylor be restricted to one or two step tasks, as Dr. Mrykalo found that Taylor was capable of following, comprehending, and retaining simple, routine 1-2 step tasks. Furthermore, the Court finds that the ALJ's accommodation of Taylor's mental impairments by limiting him to "simple, one-to-two step tasks," and "superficial contact with supervisors, coworkers, and the general public" is consistent with the doctors' opinions, Taylor's testimony that he could not be around "a lot of people" on his bad days, the function report in which Taylor indicated that he had difficulty remembering and completing tasks, and the record taken as a whole.

III. **RECOMMENDATION**

The Court's review of the administrative record reveals that the decision of the Commissioner is supported by substantial evidence. Accordingly, it is recommended that:

1. The Court should enter Judgment in favor of the Commissioner of Social Security and against Darryl Taylor, as set forth in the following paragraph.

2. The decision of the Commissioner of Social Security denying Darryl Taylor's application for Supplemental Security Income should be **AFFIRMED** pursuant to 42 U.S.C. §405(g).

Dated: October 24, 2014                                          *s/ Karoline Mehalchick*
                                                                 **KAROLINE MEHALCHICK**
                                                                 **United States Magistrate Judge**


# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARRYL TAYLOR,<br><br>    Plaintiff<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant | CIVIL ACTION NO. 3:13-CV-2831<br><br>(MANNION, D.J.)<br>(MEHALCHICK, M.J.) |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **October 24, 2014**.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: October 24, 2014**          *s/ Karoline Mehalchick*
                            **KAROLINE MEHALCHICK**
                            **United States Magistrate Judge**